```
UNITED STATES DISTRICT COURT            C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
RASHIEF OMAR BULLOCK,                                       :
                                                            :
                           Petitioner,                      :  **MEMORANDUM**
                                                            :  **DECISION AND ORDER**
             - against -                                    :
                                                            :  13 Civ. 5081(BMC)
                                                            :
SUPERINTENDENT GRASSIANO,                                   :
                                                            :
                           Respondent.                      :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 to set aside his conviction for four counts of drug possession and sale of crack cocaine and one count of perjury. All of his claims are without merit or procedurally barred and the petition is therefore denied.

## BACKGROUND

The facts can be simply stated. Police set up a buy and bust operation by calling petitioner on his cellphone numerous times over a two or three hour period to arrange the sale. Upon his arrest, bags of crack cocaine were found between his buttocks after a strip search. The perjury count came from petitioner's testimony before a grand jury in which he misidentified his cell phone number by one digit.

Petitioner testified at trial, and at a pretrial suppression hearing to suppress his cellphone, to a different story than the police, claiming that he had loaned his phone to someone he was with named Rob and arguing that it must have been Rob who set up the buy. Petitioner attributed his misstatement of his cellphone number before the grand jury to a lack of recollection, and denied that the police had recovered any drugs from him upon his arrest.

The jury rejected petitioner's testimony and convicted him on all counts. He was sentenced as a second felony offender to concurrent sentences of eight years for the drug counts and three to six years for the perjury count.

Additional facts will be set forth below as they relate to each of petitioner's points of error. In addition, petitioner filed a substantial number of post-conviction motions – two motions under N.Y. C.P.L. 330.30, one motion under C.P.L. §240.10, and two motions under C.P.L. §440.10 – together with two rounds of *pro se* supplemental briefing on his direct appeal besides his represented brief. Further complicating the matter was that, unlike most cases, his §440 motions were filed and determined prior to the perfection of, let alone decision on, his direct appeal. The resulting procedural posture of each of petitioner's four points of error in his habeas corpus petition will be addressed below.

**I. Illegal Search**

   *A. Background*

Reprising a point that petitioner raised in his *pro se* supplemental brief on direct appeal, petitioner first contends that the post-arrest strip search in which the police found the drugs violated his Fourth Amendment rights either because it is illegal to have a policy of strip-searching arrestees, or because there was no probable cause to believe that he had drugs on his person.[1] The Appellate Division held that this claim was "unpreserved for appellate review …. The defendant's failure to raise and litigate the issue during the pretrial suppression hearing, and not a failure of proof by the People, resulted in evidence of the legality of the search remaining

---

[1] Prior to the completion of briefing on direct appeal, petitioner raised this same claim in a motion under N.Y. C.P.L. §§440.10. The motions court denied it on the ground that it had to be raised on direct appeal.

undeveloped and unaddressed." People v. Bullock, 97 A.D.3d 600, 947 N.Y.S.2d 324 (2nd Dep't 2012).

The procedural events that led to this holding require some explanation because the sentencing court, but not the Appellate Division, misapprehended what had occurred. Petitioner's trial counsel had made a pretrial motion to suppress his cellphone, but had not challenged the strip search. The suppression court credited the officers' testimony that they had set up the drug buy through multiple calls to the number of petitioner's cellphone, and when petitioner was arrested, they called the number again and it rang in petitioner's hand. The court also rejected petitioner's testimony that he had given the cellphone to "Rob" and that Rob had given it back by the time of petitioner's arrest. The suppression court therefore held that there was probable cause to arrest petitioner and that the cellphone could be introduced into evidence.

The first time that petitioner raised the issue of an illegal strip search was in a *pro se*, post-conviction motion pursuant to N.Y. C.P.L. §330.30 (the "§330 motion"). At his sentencing, the sentencing judge, who was a different judge than had presided over the suppression hearing, announced that he "had handed out a decision on the *pro se* 330.30 application. If both sides are ready, we can proceed to sentencing." Petitioner was then sentenced as noted above.

The sentencing court's written disposition of the §330 motion erroneously assumed that petitioner had raised his illegal search claim at the suppression hearing when, in fact, as noted above, petitioner had only moved to suppress the cellphone. The sentencing court, operating on this erroneous assumption, ruled that the illegal search argument "was raised by the defendant pretrial at a suppression hearing where Justice Collini found the defendant's testimony to be self-serving and incredible" (which is what the suppression court had found but only with respect to

3

the cellphone) and the sentencing court denied the §330.30 motion as to the illegal search claim on that basis.

On direct appeal, the issue became somewhat more complicated. Petitioner represented in his supplemental *pro se* appellate brief that he had, in fact, filed a *pro se* motion to suppress the search in addition to his represented motion to suppress the cellphone. There was no such motion in the record on appeal (and there is none in my record either). The District Attorney argued, first, that according to the record, petitioner had never sought to challenge the strip search, and that was sufficient to bar review of the issue on appeal. Alternatively, in a footnote, the District Attorney argued that if petitioner had indeed filed a *pro se* motion to suppress the drugs, as his *pro se* supplemental brief asserted, that was inadequate to preserve the issue for appeal because of the New York rule (which has a parallel federal counterpart, see Ennis v. LeFevre, 560 F.2d 1072, 1075 (2d Cir. 1977)), that a represented defendant has no right to file *pro se* motions, citing People v. Rodriguez, 95 N.Y.2d 497, 501 (2000), and, therefore, if a trial or motion court chooses not to rule on such motions, the issue is unpreserved for appeal.[2]

The language of the Appellate Division indicates that it understood that the representation in petitioner's supplemental *pro se* appellate brief of a *pro se* motion to suppress was wrong.[3] In addition, the Appellate Division did not refer to any disposition of this issue in the suppression court, as the sentencing court had erroneously done. Nor did the Appellate Division comment on

---

[2] Petitioner filed a *pro se* reply supplemental brief which further asserted that he "preserved his issue by moving for mistrial on this issue … ." No citation to the record was included and I cannot find this claim having been raised in the trial transcript.

[3] Based on the petition before me and petitioner's *pro se* state court filings, which look quite different than his *pro se* briefs on direct appeal, it seems clear that petitioner's *pro se* appellate brief was prepared by a "jailhouse lawyer." I think what likely happened is that petitioner's assistant mistakenly thought that petitioner's *pro se* §330 motion was a *pro se* motion to suppress, or else he misunderstood or misstated that there had been a *pro se* motion to suppress the drugs. There is no indication, other than this statement in petitioner's *pro se* supplemental brief on appeal, that petitioner ever sought to preserve this issue before he filed the §330 motion (which, as discussed below, is inadequate to preserve the issue under New York law).

4

the District Attorney's alternative argument that if petitioner had unsuccessfully attempted to file a supplemental *pro se* motion to suppress, that would have been insufficient to preserve the issue. Rather, the Appellate Division accurately stated that the issue was "unpreserved" because of petitioner's "failure to raise and litigate the issue during the pretrial suppression hearing…". Bullock, 97 A.D.3d 600, 947 N.Y.S.2d 324 (2nd Dep't 2012).

> B. *The claim is procedurally barred*

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991)).  When a state court rejects a petitioner's claim because he "failed to meet a state procedural requirement[,]" the procedural bar may constitute an adequate and independent ground for the state court's decision. Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554.  See also Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 104 S. Ct. 1830 (1984)).

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. L. § 470.05, is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97 (2d Cir. 2011).  That statute requires a party to seek pretrial suppression of any evidence which he knows the prosecution intends to introduce or to object to the evidence at trial. See People v. Vann, 92 A.D.3d 702, 938 N.Y.S.2d 182 (2d Dep't 2012).  In addition, if a defendant presents arguments to suppress some evidence but not additional arguments to suppress other evidence, he has failed

to preserve any objection to suppress the evidence against which he has not moved. Id.; People v. Inge, 90 A.D.3d 675, 933 N.Y.S.2d 879 (2d Dep't 2011). Moreover, because C.P.L. §470.05 requires a pre-verdict motion, a post-verdict C.P.L. §330.30 motion does not preserve such arguments for appeal. People v. Padro, 75 N.Y.2d 820, 821, 552 N.Y.S.2d 555 (1990); People v. Stewart, 71 A.D.3d 797, 798, 800 N.Y.S.2d 60 (2d Dep't 2010); see also Hutchinson v. Unger, No. 10 cv 2385, 2012 WL 3027845, *3 n.1 (E.D.N.Y. July 23, 2012).

Since the state court properly relied on a procedural bar, the issue becomes whether any ground exists for reaching the merits notwithstanding that procedural bar. Procedural default on state law grounds may be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris, 489 U.S. at 262, 109 S. Ct. at 1043 (citations omitted). Although in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, see Murray v. Carrier, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2645-46 (1989), the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587 (2000). A fundamental miscarriage of justice is characterized as "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496, 106 S. Ct. at 2649.

The record shows that although petitioner raised claims of ineffective assistance of counsel in his represented brief on direct appeal, and in a post-judgment §440.10 motion, neither of those claims asserted that his trial counsel was ineffective for failing to challenge his strip search. On direct appeal, the claim in a footnote to his represented brief was that the Appellate Division should find counsel ineffective for failing to preserve an objection to the sufficiency of

6

the evidence. (The Appellate Division rejected this claim on the merits.) In his §440.10 motion, petitioner asserted that his counsel should have challenged the prosecutor's failure to produce a "sprint" report and should have given petitioner various pleadings and motions relating to the case. Thus, nowhere did petitioner assert in state court that his counsel was ineffective for failing to raise his illegal strip search claim. To the contrary, his *pro se* supplemental brief on direct appeal wrongly asserted that his counsel *had* raised that claim (see fn. 3 and accompanying text, supra).

Since petitioner did not assert this claim for ineffective assistance of counsel, the claim is unexhausted. However, claims that are unexhausted in the state court may be deemed to be exhausted and procedurally barred if the state court to which he would be required to present his claim would refuse to hear the claim on state procedural grounds. See Gray v. Netherland, 518 U.S. 152, 162, 116 S.Ct. 2074, 2080 (1991); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). That is the case here. Petitioner cannot seek collateral review of this claim in state court because his counsel's failure to challenge the search is apparent on the record, and all of the facts supporting that claim – consisting of petitioner's testimony at the suppression hearing (regarding the cellphone) and at trial – were also part of the appellate record on direct appeal. See N.Y.Crim. Proc. Law § 440.10(2)(c) (barring collateral review if sufficient facts appeared on the record to have permitted the claim to be raised on direct review but defendant unjustifiably failed to raise it). Petitioner has identified no off-the-record evidence that his counsel should have used but did not use to prove that his strip search was illegal.

In short, petitioner could have done the same thing with his illegal search claim as he did with his counsel's failure to move for acquittal based on the specific argument of insufficient evidence in his represented brief – raise the point on direct appeal and ask the Court to hear it on

7

the ground of ineffective assistance. He did not do that. Since no other avenue exists for raising this claim under New York law, it is deemed exhausted and procedurally barred. Nor has petitioner made any showing of manifest injustice, other than his insistence that the jury improperly rejected his testimony and believed the police officers. That is not sufficient to excuse the procedural default.

### C. The claim is not cognizable on federal habeas corpus review

In addition to being procedurally barred, federal habeas corpus review of petitioner's Fourth Amendment claim is subject to the rule of Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976). There, the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494, 96 S. Ct. at 3052. The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95, 96 S. Ct. at 3052-53.

Based upon Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts have repeatedly recognized that New York provides an adequate

8

corrective procedure for Fourth Amendment claims. See, e.g., Capellan v. Riley, 975 F.2d 67 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393 (S.D.N.Y. 2005). For this reason, courts within this Circuit have almost uniformly held that challenges to a state court's independent source determinations are not reviewable under Stone v. Powell. See e.g., Philbert v. Brown, No. 11-cv-1805, 2012 WL 4849011 (E.D.N.Y. Oct. 11, 2012); Garcia-Lopez v. Fischer, No. 05 Civ. 10340, 2007 WL 1459253 (S.D.N.Y. May 17, 2007); Crispino, 378 F. Supp. 2d 393.[4]

Petitioner broadly asserts that he falls within the exception of Stone v. Powell because he had no opportunity to raise his illegal search claim. But that is incorrect. As the Appellate Division held, it was petitioner's "failure to raise and litigate the issue during the pretrial suppression hearing … [that] resulted in evidence of the legality of the search remaining undeveloped and unaddressed." People v. Bullock, 97 A.D.3d 600, 947 N.Y.S.2d 324 (2nd Dep't 2012). New York criminal procedure offered petitioner an adequate opportunity to have properly raised this point.

## II. "False and Conflicting Evidence"

Petitioner's second point in his habeas corpus petition is that his conviction was obtained through false evidence, and thus in violation of his rights under the due process clause of the

---

[4] In Young v. Conway, 698 F.3d 69 (2d Cir. 2012), rehearing en banc den., 715 F.3d 79 (2d Cir. 2013), the Second Circuit exercised its discretion to decline application of Stone v. Powell and undertook a review of the merits of an independent source determination where the State had failed to raise Stone v. Powell in the district court. The Circuit held that Stone v. Powell is a prudential and equitable, not jurisdictional, doctrine that can therefore be waived. However, in support of its holding of the non-jurisdictional nature of Stone v. Powell, the Circuit cited Davis v. Blackburn, 803 F.2d 1371 (5th Cir. 1986) (per curiam). See Young, 698 F.3d at 86 n.10. Davis, like all other cases that have considered the issue, also held that a federal court, in the exercise of discretion, may raise Stone v. Powell sua sponte. See, e.g., United States. v. Ishmael, 343 F.3d 741 (5th Cir. 2003); Herrera v. Lemaster, 225 F.3d 1176 (10th Cir. 2000); Tart v. Massachusetts, 949 F.2d 490 (1st Cir. 1991); cf. Woolery v. Arave, 8 F.3d 1325, 1326-27 (9th Cir. 1993) (contrary to Young v. Conway, holding that district court must raise Stone v. Powell sua sponte if the State does not). Because I have identified the Stone v. Powell issue sua sponte as a matter of discretion prior to any submission by respondent, there is no issue of waiver.

14th Amendment. Petitioner asserts that there were "three arrests," or perhaps conflicting testimony as to the time when his arrest occurred, and that the police officers' testimony was further conflicting as to when the drugs were seized, which gives rise to an inference that there were no drugs seized at all, as he testified. He further asserts that the police officers gave "perjured testimony" and that the prosecutor knew it.

Notably, although this claim might be considered a claim of insufficient evidence to sustain the conviction, it is not the insufficient evidence claim that petitioner raised in his brief on direct appeal. On direct appeal, petitioner's appellate counsel argued that under New York law, when the police obtained petitioner's agreement to sell them the drugs, the prosecution had to prove that petitioner had the ability to deliver the drugs at the time he made the agreement, not several hours later when he was arrested. Since there was no evidence, according to appellate counsel, to show that petitioner had the ability to obtain the drugs when he made the agreement to sell them, the evidence was insufficient. Alternatively, appellate counsel argued, the verdict was against the weight of the evidence for the same reason. The Appellate Division held that the insufficiency claim was unpreserved and without merit, and that the verdict was not against the weight of the evidence.

That claim is not before me on the instant habeas petition. Rather, in his second point of error, petitioner is reasserting a different claim, one which he acknowledges he first raised, among others, in a post-verdict collateral proceeding under N.Y. C.P.L. §440.10. There is a bit more detail in his description of the point in his habeas petition than there was in his §440.10 motion, but not much.

At the time petitioner made this §440.10 motion – May 7, 2010 – his appeal had been neither briefed nor decided. His last brief on direct appeal was filed in April, 2012, and the

Appellate Division affirmed his conviction in July, 2012. The §440 court, by the same judge who had tried petitioner's case, decided the motion before it on September 29, 2010. As to this point, the court held the claim was "based entirely on matters entirely within the court record and as such are the proper subject of a direct appeal. … It is well settled that C.P.L. §440.10 cannot be used as a substitute for an appeal." However, the Court also held that the claim "is made solely by defendant and is unsupported by any other affidavit or evidence, and under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true." The Appellate Division denied petitioner's motion for leave to appeal.

The §440 court's ruling, coupled with petitioner's failure to raise the point in his subsequently filed direct appeal, creates some ambiguity as to my standard of review. It is clear enough that the ruling does not by itself erect a procedural bar because at that point, there was no procedural bar. The §440 court simply referred petitioner to his upcoming direct appeal to raise the point there. However, it could be asserted that petitioner's failure to take the §440 court up on that invitation means that that the claim is deemed exhausted and procedurally barred because direct appeal was the only way that the claim could be raised under the New York Criminal Procedure Law.

That would be the result on federal habeas corpus if the §440 court had not proceeded to dispose of the merits. But because it did, I must determine whether the merits are subject to review, and if so, under what standard. This is because to determine whether the state court determined the merits or refused to hear the case based on a procedural bar, I must look "to the last state court decision rendering a judgment on the petitioner's federal claim." Clark v. Perez, 510 F.3d 382, 394 (2d Cir. 2008); see also Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006). If it is "clear from the face" of the last state court decision, Fama v. Commissioner of

11

Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000), that the court relied on a state procedural ground in disposing of the petitioner's claim, federal review may be precluded. It follows, conversely, that if the last state court decision clearly did not rest on a procedural bar, as is the case here, then it must be considered to be a decision on the merits.

Here, although the §440 court properly observed that under New York Criminal Procedure Law, petitioner was relegated to a direct appeal on this claim, I see nothing in the criminal procedure law that deprives a §440 court of jurisdiction to determine the merits of such a claim if it wishes to hear it or that otherwise renders its decision a nullity in the absence of a subsequent decision on appeal. I will therefore regard the §440 court's decision on this point as a decision on the merits.

This attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

12

The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, __ U.S. __ , 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, __ U.S. __ , 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, 767 , 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, __ U.S. __ , 132 S. Ct. 2148 (2012).[5]

In reviewing the sufficiency of the evidence to support a conviction, the inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[5] Harrington and Cavazos v. Smith, __ U.S. __ , 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," 131 S. Ct. 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20, 21-22 (2d Cir. 2011) (reversing its earlier decision granting habeas relief upon consideration of Cavazos).

Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788-89 (1979). Thus, even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994). Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994).

Petitioner comes nowhere near that standard here. The discrepancies to which he vaguely referred the state court in his §440 motion are either not discrepancies at all, or are minor, well within the province of the jury to resolve. See Cavazos, 132 S.Ct. at 4 ("it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial").

What I think petitioner is saying is that the felony complaint/affidavit of one of the detectives indicates that the drugs were recovered at the scene of the arrest from his underwear, whereas the officer instead testified that were recovered in the strip search at the precinct. Petitioner is misreading the felony complaint. It is an overview of the crime, not a minute by minute description of the officers' and petitioner's movements. It simply says that he committed the crime and the drugs were recovered. It does not specify the timing, nor did it have to. Similarly, the fact that the arrest report shows an arrest time of 5:10 p.m., and the prosecution's bill of particulars states the time of arrest at "about" 5:30 p.m. is barely any difference at all. Certainly, the §440 court's determination that these *de minimis* issues did not undermine the jury verdict was not inconsistent with, nor an unreasonable application of, any Supreme Court authority.

**III.  Failure to Produce *Brady* Materials**

Petitioner claims that certain discoverable materials were not produced to him, and that the failure to do so deprived him of due process of law.  The materials he describes appear to be an original handwritten police report, a typed police report known as a DD-5, and a "Sprint" report (i.e., a report of a 911 call).  As petitioner's habeas corpus petition acknowledges, his problem throughout the multiple times he raised this point in state court was that "I never proved the … material existed."

Although petitioner raised this issue in his §330 motions prior to the imposition of sentence, he chose not to pursue the issue on direct appeal. That would not preclude its consideration if petitioner could show in a §440 proceeding that he had subsequently learned that the material existed.  But in his §440 motion, petitioner could only say that he thought that there was a "reasonable possibility" that the police and Sprint reports existed, and "reasonable probability" that a recording of a 911 call existed.  More importantly, he offered no facts showing how he arrived at these predictions of the likelihood of the materials' existence.  The §440 court denied his motion on the ground that his claims were "not documented" and "based upon speculation as to the very existence of these items."  The Appellate Division denied leave to appeal.

Petitioner renews this claim in the instant habeas corpus petition, and offers a marginally increased amount of argument compared to his §440 motion as to why he thinks these materials exist. Since the §440 court denied the motion on the merits, my review is subject to the deferential standard under AEDPA set forth above.  I cannot find an unreasonable application of Brady where there is nothing but conjecture as to whether such material even exists.  See Visich v. Walsh, No. 10 cv 4160, 2013 WL 3388953, at *16 (S.D.N.Y. July 3, 2013) ("Petitioner has

15

failed even to establish that any alleged *Brady* material actually existed at the time of his prosecution or was withheld by the state"); McCrary v. Lee, No. 12 cv 2867, 2013 WL 784581, at *3 (E.D.N.Y. Feb. 26, 2013) (denying discovery in habeas proceeding since "petitioner has not shown that any non-disclosed *Brady* material, i.e., material that is exculpatory or impeaching, actually exists, or that the he material he seeks would be material to the outcome of his criminal proceeding"); Mannino v. Graham, No. 06 cv 6371, 2009 WL 2058791, at * 9 (E.D.N.Y. July 15, 2009) ("[T]o establish a Brady violation, a petitioner must initially establish that the evidence sought, in fact, existed." (quotations and citation omitted)); Fink v. Bennett, 514 F. Supp. 2d 383, 390 (N.D.N.Y. 2007) (denying Brady claim where "petitioner has provided nothing short of sheer surmise which suggests that the prosecution ever possessed the records . . . upon which [petitioner's] Brady claim is based").

 For one thing, both the §440 court and this Court, upon review, would have to determine that the information is material, see Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555 (1995) ("Material" means that the information must "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."), a question that cannot be answered without confirmation that the material exists. In addition, petitioner had to show the state court that the prosecution had suppressed the evidence, and that it was favorable to petitioner. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936 (1999) (Brady violation requires proof that (1) the evidence at issue is favorable to the accused; (2) the State suppressed the evidence; and (3) the defendant was prejudiced). There cannot be an unreasonable application of Brady in declining to vacate a conviction based upon material that has not been shown to exist.

**IV. Lack of Probable Cause to Arrest**

Finally, petitioner contends that there was no probable cause for his arrest. The essence of this claim appears to be that the prosecution failed to turn over information showing where the police obtained his cellphone number and without such information, he could not be validly arrested. Petitioner acknowledges that the police officer testified that as a general matter, cellphone numbers for buy and bust operations are obtained from confidential informants, but petitioner asserts that because the police officer never testified that he did, in fact, obtain his number from a confidential informant, there was no probable cause for his arrest.

This point of error was not raised on direct appeal. It was raised in petitioner's §440 motion, but that court declined to hear it, stating that it was "based on matters entirely within the court record and as such [is] the proper subject of a direct appeal. C.P.L. §440.10(2)(b)." It will be recalled that petitioner's direct appeal had not been briefed at this point, but petitioner did not accept the §440 court's suggestion that he pursue the claim on appeal.

His failure to do so precludes my review of the claim on federal habeas corpus for the same reasons that apply to his illegal search claim – that the claim is deemed exhausted and procedurally barred, and because <u>Stone v. Powell</u> would preclude review in any event.

17

## CONCLUSION

The petition is denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). Additionally, any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See 28 U.S.C. § 1915(a) (3); Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
      October 23, 2013